**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| HALL & ASSOCIATES,<br><br>    *Plaintiff*,<br><br> v.<br><br>U.S. ENVIRONMENTAL PROTECTION<br>AGENCY,<br><br>    *Defendant*. |

Civil Action No. 18-1749 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a Freedom of Information Act ("FOIA") case.  5 U.S.C. § 552.  Twelve records are at issue; one exemption has been claimed.  The parties now cross-move for summary judgment.  Dkt. 56; Dkt. 62.  For the following reasons, the Court will **GRANT** in part and **DENY** in part Defendant's motion, Dkt. 56, and will **GRANT** in part and **DENY** in part Plaintiff's motion, Dkt. 62.

### I.  BACKGROUND

Every day, households and businesses in the United States send approximately 34 billion gallons of wastewater to their local treatment facilities for cleaning and treatment.  That is enough water to fill over 50,000 Olympic pools or, if you can imagine it, nearly 1,600 Bellagio Fountains.[1]  Upon arriving at a treatment facility, wastewater is cleaned in two ways.  First, a

---

[1]  *See* EPA, *The Sources and Solutions: Wastewater*, https://www.epa.gov/nutrientpollution/ sources-and-solutions-wastewater (last updated Feb. 4, 2019); Camilla Sherman, *Olympic Swimming Pools*, Phinizy Ctr. for Water Servs. (Aug. 16, 2016), https://phinizycenter.org/ olympic-swimming-pools/#:~:text=It%20turns%20out%20that%20Olympic,water%20or%20 about%20660%2C000%20gallons; *What Does 2 Billion Gallons of Water Look Like?*, WaterSmart, https://www.watersmart.com/what-does-2-billion-gallons-of-water-look-like (last visited Mar. 31, 2021 7:36 PM).

primary treatment process removes large and small solids, like plastic or sediment; next, a secondary treatment process eliminates the microscopic or dissolved waste that remains.

At many treatment facilities, primary treatment capacity exceeds secondary treatment capacity, meaning that, during periods of excess precipitation, a facility's secondary treatment processes may become overwhelmed.  When that happens, facilities can engage in a process called "blending," wherein excess water is diverted from the secondary treatment process into an auxiliary treatment facility, treated, and then merged back with water processed through the main treatment facility.  The blended water is then discharged into circulation for public use.  Dkt. 68-2 at 12 (Kloss Suppl. Decl. Ex. 2); Dkt. 52-1 at 11 (Gutierrez Decl. ¶ 21).

Defendant Environmental Protection Agency ("EPA") bears responsibility for regulating the discharge of water from treatment facilities.  *See Ctr. for Regul. Reasonableness v. EPA*, 849 F.3d 453, 454 (D.C. Cir. 2017); *see also* 33 U.S.C. § 1311.  Pursuant to that authority, the EPA has promulgated a regulation generally prohibiting "bypass"—that is, the "intentional diversion of waste streams from any portion of a treatment facility."  40 C.F.R. § 122.41(m).  A treatment facility may not engage in bypass unless, among other things, it can show that there is "no feasible alternative" to doing so.  *Id.*

In 2013, the Eighth Circuit considered a challenge to an EPA rule—memorialized in a series of letters the agency had sent to Senator Charles Grassley—that treated certain types of blending as a bypass subject to a "no feasible alternatives" requirement, even if the blended discharge ultimately satisfied the water-quality requirements applicable to non-blended discharges.  *See Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013).  The Eighth Circuit vacated the EPA's rule, holding that the EPA had acted "in excess of statutory authority insofar

as it [] impose[d] the [water-quality] limitations [on] the secondary treatment regulations internally, rather than at the point of discharge into navigable waters." *Id.* at 878.

In the wake of the Eighth Circuit's decision, the EPA released a "Desk Statement" on November 19, 2013, announcing that, while *Iowa League of Cities* was "legally binding within the Eighth Circuit," outside of that circuit, the EPA would continue to apply the regulatory interpretations vacated by the Eighth Circuit's judgment.  Dkt. 62-2 at 42; *see also Hall & Assocs. v. EPA*, 956 F.3d 621, 623 (D.C. Cir. 2020) (recounting the pertinent history of the EPA's alleged decision to not abide by *Iowa League of Cities* outside the Eighth Circuit); Dkt. 56-6 at 4 (Kloss Decl. ¶ 8).  The Desk Statement and the policy that it articulates have formed the basis for a number of FOIA requests by Plaintiff Hall & Associates ("Hall").

The first request relevant—but not directly at issue—here was filed in May 2016 and sought: (1) the Desk Statement itself; (2) records transmitting, referencing, or discussing the content and applicability of the Desk Statement; (3) records developing and discussing the Desk Statement, as well as any records demonstrating the parties involved in its development; and (4) guidance or desk statements issued by the EPA concerning post-*Iowa League of Cities* permitting decisions related to blending from November 2013 to 2016.  Dkt. 62-1 at 3.  After conducting a search (the adequacy of which Hall does not challenge), the EPA identified 35 documents responsive to Hall's request.  Dkt. 52-1 at 4 (Gutierrez Decl. ¶ 7).  The agency then released to Hall six documents in full and 29 documents in part, with redactions made pursuant to FOIA Exemption 5's deliberative-process and attorney-client privileges.  *Id.*

The following year, in December 2017, Hall filed another FOIA request—the one directly at issue in this case—aiming to secure the unredacted release of the 29 documents that had been partially withheld.  Dkt. 62 at 4; Dkt. 52-3 at 5 (Gutierrez Decl. ¶ 9).  The EPA

declined Hall's request, and Hall subsequently filed an administrative appeal.  Dkt. 52-1 at 5–7

(Gutierrez Decl. ¶¶ 10–12).  While that appeal was pending, Hall brought this suit against the

EPA in this Court.

Hall's complaint, filed on July 26, 2018, seeks an order compelling the EPA to disclose

in full the 29 partially withheld documents that eluded Hall's May 2016 and December 2017

FOIA requests.  Dkt. 1.  Since the complaint's filing, the EPA has partially acquiesced, un-

redacting and providing Hall with 15 of the 29 records sought in full.  Dkt. 56-2 at 2–3 (Def.'s

SUMF ¶¶ 9–10); Dkt. 62-3 at 19–20 (Pl.'s Resp to Def.'s SUMF ¶¶ 9–10).  The agency

continues to partially withhold 14 documents, however, all under Exemption 5.  Hall now

challenges the propriety of 12 of those 14 documents' withholdings.  The EPA defends them.

The parties' dispute is before the Court on cross-motions for summary judgment.  Dkt.

56; Dkt. 62.  Both motions are fully briefed and have been supplemented with additional

authority.  Dkt. 72; Dkt. 74; Dkt. 75.[2]  The Court has also been provided unredacted copies of

the disputed documents, which it has reviewed *in camera*.  Dkt. 58.  The parties' motions are

thus ripe for the Court's consideration.

## II.  LEGAL STANDARD

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny."  *Bartko v. Dep't of Justice*, 898 F.3d 51, 61 (D.C. Cir.

2018) (internal quotation marks omitted).  The Act is premised on the notion that "an informed

citizenry [is] vital to the functioning of a democratic society . . . [and] needed to check against

corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire &*

---

[2]  On March 30, 2021, Hall moved for leave to file additional supplemental authority in support
of its cross-motion for summary judgment and in opposition to the EPA's motion for summary
judgment.  Dkt. 75.  The Court will grant Hall's motion.

*Rubber Co.*, 437 U.S. 214, 242 (1978).  FOIA thus "protects the basic right of the public 'to be informed about what their government is up to,'" *Hall*, 956 F.3d at 624 (quoting *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 827 F.3d 145, 150 (D.C. Cir. 2016)), and embraces "'a general philosophy of full agency disclosure,'" *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994) (citation omitted).

"FOIA does not pursue transparency at all costs," however.  *Hall*, 956 F.3d at 624. Instead, Congress recognized that "legitimate governmental and private interests could be harmed by release of certain types of information," *AquAlliance v. U.S. Bureau of Reclamation*, 856 F.3d 101, 102 (D.C. Cir. 2017) (citation omitted), and, as a result, it exempted nine categories of records from FOIA's disclosure requirements, *see* 5 U.S.C. § 552(b)(1)–(9).  In general, these exemptions are to be "narrowly construed."  *FBI v. Abramson*, 456 U.S. 615, 630 (1982)).

When an agency withholds records based on a FOIA exemption, it bears the burden of justifying its withholding.  *See Fed. Open Mkt. Comm. of the Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 352 (1979); *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008).  That requires the government to submit either "relatively detailed and non-conclusory" affidavits or declarations explaining why a document was withheld, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks and citation omitted), or an index that further elucidates, on a document-by-document basis, the rationale for the FOIA exemptions claimed (a "*Vaughn* index"), *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973).  "The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection."  *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996).  In addition, "[t]o withhold a responsive

record, an agency must show both that the record falls within a FOIA exemption . . . and," in most cases, "that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption.'" *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).[3]  Finally, because "the focus of . . . FOIA is information, not documents, . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  Rather, FOIA requires the agency to release "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007); *see also Stolt-Nielsen Transp. Grp. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) ("[A]n agency cannot justify withholding an entire document simply by showing that it contains some exempt material." (internal quotation marks and citation omitted)).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56.  *See, e.g., Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011).  To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that she is entitled to judgment as a matter of

---

[3]  The foreseeable-harm requirement was introduced to FOIA in 2016.  *See* FOIA Improvement Act of 2016, Pub. L. No. 114–185, §§ 2, 6, 130 Stat. 538, 539, 544–45 (2016).  For an overview of the Act's origins as well as district court decisions evaluating the contours of the foreseeable-harm requirement, *see Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 104–06 (D.D.C. 2019); *see also Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 77 (D.D.C. 2018), *rev'd in part on reconsideration*, 442 F. Supp. 3d 240 (D.D.C. 2020); *Jud. Watch, Inc. v. U.S. Dep't of Just.*, No. 17-cv-832, 2019 WL 4644029, at *4 (D.D.C. Sept. 24, 2019); S. Rep. No. 114-4, at 3–4 (2015).  Although not at issue here, reasonably foreseeable harm need not be shown if "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i)(II).

law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A fact is

"material" if it is capable of affecting the outcome of a dispute, *see Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if the evidence is such that a

reasonable factfinder—here, the Court—could find in favor of the nonmoving party, *see Scott v.*

*Harris*, 550 U.S. 372, 380 (2007).  For a FOIA case in particular, "summary judgment may be

granted on the basis of agency affidavits if they contain reasonable specificity of detail rather

than merely conclusory statements, and if they are not called into question by contradictory

evidence in the record or by evidence of agency bad faith." *Jud. Watch, Inc. v. U.S. Secret Serv.*,

726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted).  Accordingly,

"[s]ummary judgment is warranted when the agency's affidavits 'describe the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith.'" *Elec. Frontier Found. v. U.S.*

*Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C.

Cir. 1984)).

　　　The Court reviews an agency's decision to withhold records or portions thereof *de novo*.

*See* 5 U.S.C. § 552(a)(4)(B).

### III.  ANALYSIS

　　　Before turning to the merits of the parties' dispute, a few words are in order about the

proper framing of this case.  The parties have, at times, cast their dispute in sweeping terms,

requesting that the Court resolve when, if it all, the EPA decided that it would not abide by *Iowa*

*League of Cities* outside the Eighth Circuit.  According to Hall, if the EPA's non-acquiescence

decision was made before the records here were created, then the records are not predecisional

7

by definition.  If, on the other hand, the EPA's non-acquiescence decision was made after the records here were created—or if a non-acquiescence decision was never made—then, the EPA contends, records discussing how *Iowa League of Cities* would be applied are predecisional and protected by Exemption 5.

This all-or-nothing approach cannot resolve the parties' dispute.  The Court must take every document as it comes.  A document may, for example, postdate the EPA's purported non-acquiescence decision but also contain deliberations on related or other matters worthy of protection.  Likewise, a document may precede the EPA's alleged non-acquiescence decision, but be nondeliberative—and thus, nonexempt.  Ultimately, then, irrespective of the precise timing of the EPA's non-acquiescence decision, the Court must evaluate the propriety of EPA's Exemption 5 withholdings as applied to each document and redaction.

## A.    FOIA Exemption 5

Exemption 5 permits the withholding of "interagency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Courts have construed this exemption to encompass "the privileges available to Government agencies in civil litigation."  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021); *see also Tax'n with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981).  This includes "materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive 'deliberative process privilege.'"  *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980)) (citations omitted).  In this case, the EPA relies on the deliberative process and attorney-client privileges to justify its invocation of Exemption 5.

1. *Deliberative Process Privilege*

The deliberative process privilege protects "documents 'reflecting advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). The "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (internal quotation marks and citations omitted). "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151.

To properly invoke the privilege, an agency must demonstrate that the withheld record is both predecisional and deliberative. *See U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 785–86. In practice, these requirements "tend to merge." *Access Rep. v. Dep't of Just.*, 926 F.2d 1192, 1195 (D.C. Cir. 1991). A record is predecisional if it was "generated before the adoption of agency policy," *Coastal States Gas Corp.*, 617 F.2d at 866, and "if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made," *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (internal quotation marks and citations omitted). A record is deliberative, meanwhile, if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp.*, 617 F.2d at 866; *see also Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997); *Jud. Watch, Inc., v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005). When invoking the privilege, therefore, an

"agency must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process."  *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 585–86 (D.C. Cir. 1987) (internal quotation marks and citation omitted).  The agency must also explain "the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents."  *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982) (internal quotation marks and citations omitted).  Finally, the foreseeable-harm requirement applies with special force to deliberative process withholdings under Exemption 5, which Congress viewed as posing particular risks of "'overuse.'"  *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (quoting H.R. Rep. No. 114-391, at 10 (2016)).

In some circumstances, the deliberative process privilege will not apply outright.  That may occur, as relevant here, when the contents of the document were "adopted, formally or informally, as the agency position on an issue or [are] used by the agency in its dealings with the public."  *Coastal States Gas Corp.*, 617 F.2d at 866.  So too documents that reflect an agency's "working law"—that is, "opinions and interpretations which embody the agency's effective law and policy"—remain unshielded by Exemption 5.  *Sears*, 421 U.S. at 153 (internal quotation marks omitted); *see also Tax'n with Representation Fund*, 646 F.2d at 667 (Exemption 5 does not "protect communications that implement an established policy of an agency").  As the D.C. Circuit has explained, an agency may not develop a "a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'"  *Schlefer v. United States*, 702 F.2d 233, 244 (D.C. Cir. 1983) (quoting *Coastal States Gas Corp.*, 617 F.2d at 867).

Finally, Exemption 5 does not, of course, protect "final agency actions that constitute statements of policy or final opinions that have the force of law, or which explain actions that an agency has already taken." *Tax'n with Representation Fund*, 646 F.2d at 677.

In sum, then, the deliberative process privilege "protects 'predecisional communications' reflecting an agency's internal deliberations, but not communications that explain a decision that has already been made." *Tax Analysts*, 294 F.3d at 80 (quoting *Sears*, 421 U.S. at 151–52).

2.   *Attorney-Client Privilege*

Exemption 5 also incorporates the attorney-client privilege, which protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data*, 566 F.2d at 252.  In FOIA cases, the agency is typically the "client" and the agency's lawyers (or lawyers at the Department of Justice) are typically the "attorneys" for the purposes of the attorney-client privilege.  *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998) (citing *Coastal States Gas Corp.*, 617 F.2d at 863).  "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice" and "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" *Tax Analysts*, 117 F.3d at 618 (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)).

## B.   The Records

Twelve of the 35 documents responsive to Hall's request are at issue here:  Documents 9, 14, 21, 23, 24, 26, 27, 31, 32, 33, 34, and 35.  The Court will consider the applicability of Exemption 5 to each document in turn.

1. *Document 9*

According to the EPA's *Vaughn* index, "Document 9 is a five-page email string containing the latest 'Hot Issues' for the Municipal and Industrial National Pollutant Discharge Elimination System (NPDES) Section within EPA Region 4." Dkt. 52-4 at 3.[4]  The document's withheld contents are predecisional, the EPA contends, because they "pertain to [then-]ongoing NPDES permitting activities and potential policies and actions, for which the *Iowa League of Cities* decision is not relevant." *Id.*  The withheld contents are deliberative, the EPA continues, because (1) "the information was shared and discussed among the Region 4 Municipal and Industrial NPDES Section staff and other Region 4 employees so that they could have a meaningful discussion on how to proceed with the [identified] matter[]," and (2) the "information contains potential action items, staff or manager opinions, analysis, and recommendations of ongoing policy and NPDES permits that were under consideration at the time the document was created." *Id.*

In response, Hall argues that it only seeks language contained on page 4 of the document, and, with respect to that language, "[n]owhere does [the] EPA explain in its *Vaughn* Index how the [withheld] information is properly classified as deliberative." Dkt. 63-1 at 53.  In addition, Hall maintains that the surrounding context suggests that the withheld materials on page 4 likely discuss the "EPA's post-*Iowa League* implementation decision [as] applied to NPDES permit actions." *Id.*  Finally, Hall argues that the EPA has not sufficiently identified what foreseeable harm could result from the withheld materials' disclosure because, as Hall contends, those materials merely memorialize or implement established agency policy. *Id.* at 48–52.

---

[4] "An NPDES permit is typically a license for a facility to discharge a specified amount of a pollutant into a receiving water under certain conditions."  EPA, *About NPDES*, https://www.epa.gov/npdes/about-npdes (last visited Mar. 31, 2021).

The Court has reviewed Document 9 *in camera* and, based upon that review, it concludes that the EPA's withholdings satisfy Exemption 5 with four small exceptions.

To start, the vast majority of the withheld material in Document 9 is protected by Exemption 5 because the material is, as the EPA explains, predecisional and deliberative. The withheld portions of the document are predecisional because they pertain to NPDES permits not yet granted, and the withheld portions are deliberative because they reflect the agency's internal thought processes regarding how those pending permits should be adjudicated. The withheld portions do not, as Hall contends, simply iterate or apply established agency policy: to the contrary, they are early-stage attempts to make policy. And Hall is indeed mistaken in arguing that the withheld contents of Document 9 relate to *Iowa League of Cities*. Finally, the Court agrees with the EPA that disclosure of the withheld materials "would cause foreseeable harm because [disclosure] would discourage open and frank discussions among EPA staff and managers about issues related to the review and tracking of pending NPDES permits," and because disclosure "could cause public confusion by representing potential actions that may not have occurred or suggesting various reasons for [the] EPA's response to the identified ongoing NPDES permits." Dkt. 52-4 at 3. Although Hall may be correct that boilerplate invocations of the "chilling effect" are insufficient at summary judgment, Dkt. 63-1 at 48–52, the EPA here identifies specific topics of discussion that would be hindered by Document 9's unredacted disclosure. Given the interstitial decisionmaking of the EPA that Document 9's disclosure would reveal, the Court concludes that there exists a real likelihood of such harm coming to pass.

With that said, certain aspects of the EPA's withholdings in Document 9 may not qualify under Exemption 5. In particular, the EPA has not adequately justified its withholding of: (1) the first three lines under the "Coal Mining Issues Management Tracking" header, as that section

reflects activities already complete for which no further action was contemplated; (2) the first

sentence in the first row of the middle column of page 4, under the "Improving the Integrity and

Effectiveness of the NPDES Program" header on page 3, which references a purely factual

matter that is publicly known; (3) the first three entries in the right-most column on page 4, the

deliberative nature of which is unclear (especially in light of other nonredactions made in

Document 9); and (4) the first line under the "R4 NPDES Reference Library" header on the last

page of Document 9, the disclosure of which the Court is unpersuaded would cause the EPA any

harm.

To be sure, the Court recognizes that an agency is not obligated to segregate non-exempt

material if "the excision of exempt information would impose significant costs on the agency and

produce an edited document with little informational value." *Neufeld v. IRS*, 646 F.2d 661, 666

(D.C. Cir. 1981); *see also Mead Data*, 566 F.2d at 261 n.55 ("[A] court may decline to order an

agency to commit significant time and resources to the separation of disjointed words, phrases,

or even sentences which taken separately or together have minimal or no information content.");

*Ullah v. CIA*, 435 F. Supp. 3d 177, 188 (D.D.C. 2020). And the Court further recognizes that

factual material may be protected under the deliberative process privilege where it is

"inextricably intertwined with the deliberative material." *Jud. Watch, Inc. v. Dep't of Just.*, 432

F.3d 366, 372 (D.C. Cir. 2005) (internal quotation marks omitted). But the EPA has not

explained how or why disclosure of the material identified above "would impose significant

costs on the agency," *Neufeld*, 646 F.2d at 666, or would demand the "agency to commit

significant time and resources" to processing the records in a different manner, *Mead Data*, 566

F.2d at 261 n.55. Neither has the agency explained why the withholdings covering purely factual

material are inseparable from the deliberative portions of Document 9. *See Jud. Watch*, 432 F.3d

at 372.  Accordingly, the Court cannot, at this juncture, grant summary judgment to the EPA with respect to the potentially unexempt withholdings described above.  The Court also concludes, however, that it is premature to grant Hall's cross-motion as to those withheld portions without giving the EPA an opportunity to further clarify its justification for the withholdings.

Consequently, the Court will grant the EPA's motion for summary judgment as to Document 9, with the exception of the four withheld portions discussed immediately above.  The Court will also deny Hall's motion without prejudice.[5]

2.   *Document 14*

"Document 14 is an email drafted by Deane Bartlett, a Region 3 staff attorney, and sent to other attorneys in the Region 3 Office of Regional Counsel," that "discusses the *Iowa League of Cities* decision and the attorney's opinion on ongoing matters."  Dkt. 52-4 at 4.  The EPA argues that the withheld information is protected by Exemption 5 because it (1) "discusses ongoing NPDES permitting activities and specific issues that the attorney deemed to be important for consideration," and (2) "[a]t the time the email string was created, the NPDES permitting matters were still under discussion and not finalized, and EPA Region 3 was still considering how to respond to various issues within those ongoing NPDES permitting matters."  *Id.*

Hall counters that "[t]he email indicates [that] it is communicating EPA's announced position" with respect to *Iowa League of Cities* and that information "discussing the application of . . . [a]gency policy . . . is not covered under the deliberative process privilege."  Dkt. 63-1 at

---

[5]  The Court notes that Document 9 contains hyperlinked material that has not been produced to the Court *in camera*.  The Court will accordingly order the EPA to produce the hyperlinked material to the Court *in camera* or show good cause why it otherwise need not do so.

54–55.  In addition, Hall argues that no "policy decision was being rendered or discussed" in the email chain.  *Id.* at 55.

Based on its *in camera* review of Document 14, the Court concludes that the EPA has sufficiently justified its withholding under Exemption 5.  The withheld portions of the document do not discuss any applications of agency policy, settled or otherwise.  Instead, those portions of the document discuss the need to respond to pending permitting matters and identify one issue of particular concern relating to potential litigation that the agency may face.  The Court also agrees with the EPA that disclosure of the withheld materials would cause foreseeable harm, potentially chilling agency discussion on sensitive topics related to permitting and litigation that may follow as a result.  Finally, the Court concludes that the EPA has produced to Hall all segregable portions of Document 14.

The Court will, accordingly, grant the EPA's motion for summary judgment with respect to Document 14, and will deny Hall's motion with respect to Document 14.

### 3.  *Documents 21, 23, 24, and 33*

In August 2016, the "EPA inadvertently released" Documents 21, 24, and 33 to Hall "in the course of responding to other FOIA requests" that Hall had filed.  Dkt. 68-2 at 4 (Kloss Suppl. Decl. ¶ 8).  Hall also claims that it "has received a virtually identical version of" Document 23 "that is entirely unredacted."  Dkt. 63-1 at 57.  Hall has appended these documents to his motion papers in this case, and the documents are accordingly available for viewing by any interested member of the public.  *See* Dkt. 63-2 at 58–69 (Ex. 18–20).

In the ordinary course, when a party receives the relief he seeks during the pendency of a litigation, the matter becomes moot and subject to dismissal.  *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–478 (1990).  Here, Hall now has the documents that it wants.  It is thus

unclear whether the parties' dispute over Documents 21, 23, 24, and 33 still presents a live, justiciable controversy.  To be sure, the EPA has contacted Hall to request that Hall "return the documents[,] . . . delete any copies in its possession[,] . . . [and] cease any further publication of the inadvertently released information."  Dkt. 68-2 at 5 (Kloss Suppl. Decl. ¶ 9).  And Hall has, for its part, evidently declined to do any of those things.  *Id.*  The EPA does not, however, ask the Court to order Hall to return Documents 21, 23, 24, and 33.  Nor has the EPA moved to seal the docket (where the documents are, and have long been, publicly available) or moved for any protective order limiting Hall's disclosure of the documents.

In light of the foregoing, the Court will require the parties to address whether Hall's complaint, insofar as it seeks Documents 21, 23, 24, and 33, has been rendered moot.  The Court will also, accordingly, deny both motions for summary judgment as to those four documents without prejudice.

   4.  *Documents 26 and 27*

"Document 26 and 27 are near duplicates of a draft legal briefing document created by an attorney to consult with managers in the Office of Water, Office of Enforcement and Compliance Assurance, and Office of General Counsel about how to respond to a November 26, 2013, letter from the U.S. Conference of Mayors and others."  Dkt. 52-4 at 11.  The EPA withheld portions of the documents under both the deliberative process and attorney-client privileges.  *Id.*  "The withheld portions of the documents are deliberative," the EPA argues, because they were "created by an EPA attorney with no decision-making authority" and because the document was "shared with managers, program staff, and attorneys in other EPA offices to facilitate discussion on how the Agency should respond to the November 26, 2013 letter."  *Id.* at 12.  The withheld portions of the document were predecisional, meanwhile, because the decision of how to respond

to the U.S. Conference of Mayors' letter had not yet been made. *Id.* Finally, the EPA argues that "[t]he withheld information" is protected by the attorney-client privilege because it "comprises confidential communications between an Office of General Counsel attorney and his clients within the Office of Water and Office of Enforcement and Compliance Assurance," and because "[t]he withheld information in the draft briefing documents pertains to legal advice on the *Iowa League of Cities* decision and how to respond to the November 26, 2013 letter." *Id.*

Hall argues that "based upon the record before the Court, [the] EPA had already clearly decided to respond to the Conference of Mayors letter, and [decided] what the contents of that letter would be, prior to the development of Documents 26 and 27." Dkt. 63-1 at 59. In addition, Hall contends that the "with[e]ld information within Documents 26 and 27 [merely] communicate[s] the current status of the" EPA's approach to *Iowa League of Cities*, and that such information constitutes "a purely factual statement that may not be considered deliberative or attorney[-]client" privileged. *Id.* at 60 (internal quotation marks omitted).

The Court agrees with the EPA that Documents 26 and 27 are properly shielded by the deliberative process privilege. To start, there is no genuine dispute of material fact, contrary to Hall's contention, that the EPA had not yet determined how to respond to the Conference of Mayors' letter before Documents 26 and 27 were created. Indeed, the very record materials cited by Hall to purportedly show that the EPA had reached a final decision on responding to the letter before Document 26 and 27 were created, *see* Dkt. 63-1 at 59 (citing Documents 14, 21, and 28), all indicate the opposite, even when viewed in the light most favorable to Hall. For instance, Document 14 merely explains that the EPA had received a letter from the Conference of Mayors and contains no indication that the EPA had yet formulated its response, Dkt. 56-3 at 146; Document 21 provides an example of what the agency might say in response to the letter, *id.* at

18

159; and Document 28 states that the "EPA is currently reviewing the letter and will provide a response in the near future," *id.* at 176.

Not only are Documents 26 and 27 predecisional, they are also deliberative.  This conclusion does not turn on when, or whether, the EPA made a decision with respect to implementation of *Iowa League of Cities*.  Rather, the EPA staff who wrote and received Documents 26 and 27 were engaged in the process of strategizing about how best to respond to an inquiry about the agency's policy.  That type of information is properly shielded by the deliberative-process privilege, even if the ultimate communication and underlying policy are not. *Reporters Comm. for Freedom of the Press v. FBI*, No. 15-cv-1392, 2020 WL 1324397, at \*7 (D.D.C. Mar. 20, 2020) ("[M]ultiple members of this court . . . have [concluded that] if documents are 'generated as part of a continuous process of decision making' such as 'how to respond to ongoing inquiries' from the press or Congress, they are predecisional and deliberative." (quoting *Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010)) (citing *Jud. Watch, Inc. v. Dep't of Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011); *Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 880 F. Supp. 2d 105, 111–12 (D.D.C. 2012)) *see also Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F. Supp. 3d 120, 129 (D.D.C. 2016) ("The deliberative process privilege protects not only the content of drafts, but also the drafting process itself.").  As a result, the Court concludes that the withheld material in Documents 26 and 27 is properly shielded by the deliberative-process privilege of Exemption 5.

Finally, the Court agrees with the EPA that all segregable materials from Document 26 and Document 27 have been disclosed to Hall and that foreseeable harm would result from those materials' disclosure—namely, a diminution in candor with respect to how the EPA will evaluate its responses to future public inquiries.

The Court will, accordingly, grant the EPA's motion for summary judgment as to Documents 26 and 27.  The Court will also deny Hall's motion for summary judgment as to Documents 26 and 27.

5.  *Document 31*

"Document 31 is a string of three emails that discusses issues related to EPA's on-going discussions concerning a possible Kansas State-issued permit for a Johnson County, Kansas facility."  Dkt. 52-4 at 13.  The EPA is withholding portions of the document based on the deliberative process and attorney-client privileges.

The EPA argues that "[t]he withheld information reflects predecisional deliberations between program staff engineer and other EPA staff within the Office of Water and Office of Enforcement and Compliance" related to discussions of "an approach being considered by Johnson County, Kansas for a not-yet-proposed state permit."  *Id.*  The withheld information is deliberative, the EPA contends, "because the information was created by an EPA staff engineer and the Office of Enforcement and Compliance Assurance attorneys and managers" to discuss "legal issues related to the Johnson County NPDES permitting approach."  *Id.*  In addition, the EPA notes that the "purpose of sharing the summary briefing document [referenced in the emails] was to highlight for discussion key issues related to an approach being considered for a state-issued NPDES proposed permit in Region 7 and [to] seek the views of other EPA offices, particularly the Office of Enforcement and Compliance Assurance."  *Id.*  Finally, the EPA argues that even if the document is not protected by the deliberative process privilege, the withheld portions qualify under the attorney-client privilege because they "comprise[] confidential communications between Office of Enforcement and Compliance Assurance attorneys and

Office of Water clients that relate[d] to legal issues triggered by discussion of a proposed approach for the Johnson County state-issued NPDES permit." *Id.* at 14.

Hall responds that Document 31 "is plainly addressing the implementation of an already adopted EPA NPDES permitting policy," and, "[t]herefore, it is a post-decisional document." Dkt. 63-1 at 61. Hall continues: "Deciding whether a proposed permit action meets EPA's adopted policy is a factual/regulatory conclusion. It does not involve the development or deliberation of such policy. Therefore, if the [withheld portions of the email] . . . simply confirmed or described the Agency's policy determination, that information may not remain withheld." *Id.*

Although a close question, the Court concludes that, at least on the present record, the EPA has failed to carry its burden of demonstrating that Document 31 is predecisional.

The D.C. Circuit has indicated that "[t]he failure to specify the relevant final decision constitutes a sufficient ground for remanding [Exemption 5 claims] to the district court." *Senate of the Com.*, 823 F.2d at 584; *see also Judge Rotenberg Educ. Ctr., Inc. v. U.S. Food & Drug Admin.*, 376 F. Supp. 3d 47, 66 (D.D.C. 2019). That does not mean, of course, "that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared." *Sears*, 421 U.S. at 151 n.18. Instead, "even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process." *Gold Anti–Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011). To be sure, identifying what counts as "a definable decision-making process," *id.*, is not always an easy task, and the precise contours of the requirement remain unsettled in the caselaw. With that said, though, the

21

Court is unpersuaded that the EPA has identified a decision-making process with the specificity

necessary to justify its withholding of Document 31.

> The EPA's *Vaughn* index states, in relevant part, as follows:
>
> EPA headquarters has no delegated authority in the issuance of proposed and final NPDES permits in Kansas.  Its function is consultative for the Regional permitting staff, who communicates information to the regulated public.  In the consultative process, the Office of Wastewater Management and the Office of Enforcement and Compliance *may be asked for their advice*.  In some cases, the Office of General Counsel *may be asked for its views. . . .  The withheld information did not ripen to any final agency policy, action or decision.*

Dkt. 52-4 at 13 (emphasis added).  While it thus possible that Document 31 concerns

deliberations regarding how the agency would communicate with its regional permitting staff,

the EPA's *Vaughn* index does not aver (1) that EPA headquarters was ever asked, or prepared to

answer, regional permitting staffs' questions about the Johnson County permit; (2) that any

significant deliberations occurred with respect to those topics; or (3) that at the time Document

31 was created, any state permit for Johnson County had even been proposed.  Dkt. 52-4 at 13.

Indeed, the EPA's *Vaughn* index at times argues that Document 31 is itself deliberative because

of the "summary briefing document" that it transmitted.  *Id.*  The EPA does not explain,

however, why the deliberative nature of the attachment renders the entire email chain exempt

from FOIA.  And without identifying a decision-making process of which the emails were

themselves a part, the Court cannot agree with the EPA, on the present record, that Document 31

is properly shielded by the deliberative process privilege.

> The Court also concludes that the EPA has failed to meet its burden to demonstrate that

Document 31 should be withheld under the attorney-client privilege.  Although an attorney, Jim

Vinch, is included on the email exchange, it remains unclear from the face of the document what

legal advice—as opposed to policy advice—was sought or delivered.  The EPA's *Vaughn* index does not clarify, either.

The Court will, accordingly, deny the EPA's motion for summary judgment as to Document 31.  But because the EPA may still be able to offer an explanation sufficient to sustain its withholding, the Court will not grant Hall's motion for summary judgment and, instead, will provide the EPA an opportunity to further clarify to what discrete agency action or decision-making process Document 31 contributed or how the email related to the provision of legal advice.  Hall's motion will therefore be denied without prejudice as to Document 31.

6.  *Document 32*

Document 32 is an email string, dated February 5, 2014, that discusses a draft strategy developed by a former program staff engineer in the Office of Water "that provides a staff level proposal of how to proceed after the *Iowa League* decision."  Dkt. 52-4 at 14–15.  The EPA is withholding portions of the document based on the deliberative process and attorney-client privileges.  *Id.* at 14.

The Court concludes that the EPA has not sufficiently demonstrated that the withholdings in Document 32 are appropriate.  As explained above, to invoke the deliberative-process privilege, the agency must explain how or why a document "assist[ed] an agency decisionmaker in arriving at his decision."  *Petrol. Info.*, 976 F.2d at 1434 (D.C. Cir. 1992) (internal quotation marks omitted).  Here, on the Court's review, it appears that Document 32 is predecisional and deliberative about whether to raise an issue with a senior official within the agency for further review.  But that is not the rationale for withholding that the EPA provides in its *Vaughn* index.  To the contrary, rather than explaining how Document 32 contributed to a definable agency decision-making process—here, a staff-level deliberation about whether to raise an issue with a

senior official for further review—the EPA offers an overly vague description of the relevant

decision-making process and, then, disclaims its predecisional nature, averring that "[t]his

process . . . did not ripen into Agency policy or decisions." Dkt. 52-4 at 15.  That does not

necessarily indicate that the Document lies outside Exemption 5—after all, [s]ometimes a

proposal dies on the vine," *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786—but it does mean that

the agency must, as explained, do more to show that the document was "generated as part of a

definable decision-making process," *Gold*, 762 F. Supp. 2d at 135–36.  On the present record,

the EPA's only effort to do so is to argue that Document 32 related to the "continuing process of

examining the impacts of the Eighth Circuit's decision on and the future of its NPDES program."

Dkt. 52-4 at 15.  The Court is not convinced at this juncture, however—especially in the absence

of any briefing from the parties on the issue—that such a process is sufficiently discrete to render

Document 32 predecisional and deliberative within the meaning of Exemption 5.  The Court thus

cannot, at least on the present record, conclude that the EPA has carried its burden of

demonstrating that Document 32 was properly withheld under the deliberative process privilege.

The EPA's reliance on the attorney-client privilege is similarly wanting.  The EPA argues

that Document 32 was shared "with the Office of Enforcement and Compliance Assurance to

solicit feedback" and to receive "legal input from [the author's] managers prior to responding to

his program client.  Dkt. 52-4 at 15.  But the EPA's *Vaughn* index does not specify or provide

any detail about the nature of legal advice sought, nor is it clear, based on the Court's *in camera*

review of the documents, what that legal advice might be.

For these reasons, the Court will deny the EPA's motion for summary judgment as to

Document 32.  The Court will, however, permit the EPA to further clarify its rationale for

withholding Document 32 and, accordingly, will not grant Hall's motion for summary judgment

as to this document, given that a plausible basis may exist for the EPA's withholding.  Hall's motion will therefore be denied without prejudice as to Document 32.

7.  *Document 34*

Document 34 is an email that was created by a staff attorney in the Office of Enforcement and Compliance Assurance and sent to a Department of Justice attorney seeking her legal views about how *Iowa League of Cities* would affect future enforcement cases.  Dkt. 52-4 at 18.  The Court concludes, based upon its *in camera* review, that the document falls within the attorney-client privilege.  The document reveals a lawyer from the EPA, here the client agency, seeking input from a lawyer from the Department of Justice regarding legal arguments or analysis on a question within the EPA's jurisdiction.  "The withheld portion of the email string" was, furthermore, shared "only with EPA employees who had a need-to-know[] and [was] not widely disseminated throughout the Agency."  Dkt. 52-4 at 18 (emphasis omitted).  Document 34 is thus shielded from disclosure under FOIA by Exemption 5's attorney-client privilege.  *See Mead Data*, 566 F.2d at 252.  Finally, the Court agrees with the EPA that all segregable portions of the document have been released and that, furthermore, disclosure of such privileged material would reasonably imperil the agency's ability to receive legal advice on issues central to its mission.

The Court will, accordingly, grant the EPA's motion for summary judgment with respect to Document 34.  The Court will also deny Hall's motion for summary judgment with respect to Document 34.

8.  *Document 35*

Document 35, the last document at issue, "is an email string that discusses issues related to EPA's on-going review of an approach proposed for the Johnson County, Kansas State-issued NPDES Permit being discussed by staff in Region 7 with Johnson County."  Dkt. 52-4 at 19.

The EPA is withholding portions of the document based on the deliberative process and attorney-client privileges.  *Id.*

Based on its *in camera* review of Document 35, the Court agrees with the EPA that the deliberative-process privilege applies to the first withholding made by the agency.  That withheld content reflects a genuine back-and-forth between agency officials and is predecisional with respect to the agency's proposed approach "for the Johnson County, Kansas's State-issued NPDES permit" under consideration.  *Id.*  For many of the same reasons already explained, moreover, the Court agrees that disclosure of the information would pose legitimate risks to the EPA's deliberative interests.  As to the first withholding on Document 35, then, the Court concludes that the EPA's invocation of Exemption 5 is proper.

The same cannot be said for Document 35's second withholding.  That material contains purely factual information, and the Court cannot discern—nor has the EPA explained—how that material is "inextricably intertwined with the deliberative material."  *Jud. Watch*, 432 F.3d at 372.  The withheld material, moreover, is effectively revealed in other documents that the EPA has disclosed, and it is perhaps therefore unsurprising that the EPA fails adequately to explain why disclosure of the withheld material is likely to dampen agency deliberations or otherwise engender foreseeable harm.  The agency's invocation of a "chilling effect" in this context, Dkt. 52-4 at 20, "fall[s] short of articulating 'a link between the specified harm and specific information contained in the material withheld,'" *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) (quoting H.R. Rep No. 114-391, at 9 (2016)).

Although the Court has, with respect to the other documents for which the EPA's withholding justifications fall short, provided the EPA another opportunity to supplement its *Vaughn* index, the Court can discern no benefit to doing so here.  As explained, the foreseeable-

harm requirement applies with special force to the deliberative process privilege.  *See Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106.  Yet, given the nature of the information at stake, the Court concludes that the EPA has not, and cannot, identify how disclosure of the material withheld from the January 17, 2014 email in Document 35 risks foreseeable harm to the agency.  The Court will, accordingly, grant Hall's motion for summary judgment with respect to that withholding and deny the EPA's motion for summary judgment with respect to that withholding.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the EPA's motion for summary judgment, Dkt. 56, is **GRANTED** in part and **DENIED** in part, and that Hall's motion for summary judgment, Dkt. is 62, is **GRANTED** in part and **DENIED** in part; it is further

**ORDERED** that the EPA's motion for summary judgment is **GRANTED** with respect to Documents 14, 26, 27, and 34, and with respect to the first withholding in Document 35; it is further

**ORDERED** that the EPA's motion for summary judgment is **GRANTED** as to all withheld portions of Document 9 with the exception of the potentially segregable withholdings identified in the Court's opinion, as to which the EPA's motion for summary judgment is **DENIED**; it is further

**ORDERED** that the EPA's motion for summary judgment is **DENIED** on the merits with respect to Documents 31, 32, and the second withholding in Document 35; it is further

**ORDERED** that the EPA's motion for summary judgment is **DENIED** as premature with respect to Documents 21, 23, 24, and 33; it is further

**ORDERED** that Hall's motion for summary judgment is **GRANTED** with respect to the second withholding made in Document 35; it is further

**ORDERED** that Hall's motion for summary judgment is **DENIED** without prejudice in all other respects; it is further

**ORDERED** that Hall's motion for leave to file supplemental authority, Dkt. 75, is **GRANTED**; it is further

**ORDERED** that each party shall file a status report with the Court on or before April 30, 2021, addressing whether the parties' dispute over Documents 21, 23, 24, and 33 still presents a live, justiciable controversy; and it is further

**ORDERED** that the EPA shall, on or before April 30, 2021, produce the hyperlinked material in Document 9 to the Court *in camera* or show good cause why it need not do so.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 31, 2021